Jackson, J.
By this writ we have laid before us the record of the proceedings had before two justices of the peace for this county on the statute of 1784, c. 8, directing the proceedings against forcible entry and detainer. The process was originally brought on the complaint of Caroline Dudley and others against Benjamin Dudley • and a verdict having been found against the said Benjamin, judg ment was rendered for the complainants to have restitution of the premises. The record contains a bill of exceptions, or statement of the evidence on the trial, certified by the two justices; on which three exceptions have been taken by the counsel for the respondent, as the ground of his motion to quash the proceedings.
The first is, that the complainants have no title to the premises in question. [Here the judge recited the evidence from the bill of exceptions, and proceeded.] On these facts, we see no reason to question the title of the complainants. Their ancestor entered in 1802, claiming under the deed to him, and continued seised untd his death. It is said that nothing passed by that deed, because of the adverse title and possession at the time in Benjamin Dudley. But B. D. had at that time cancelled his deed, and he had not then an adverse possession. He voluntarily relinquished the possession to Stearns, and through him to the new purchaser Even if he could be supposed still to retain the actual possession, yet the circumstances show that it was not under a claim of adverse title; which is necessary in such a case * to [ * 407 ] defeat the operation of a deed by another person. The possession by a third person of land to be conveyed by another, is not, of itself, conclusive against the effect of the conveyance. It may always be explained; as by showing that the occupant was tenant for years of the grantor, or that he held in any other manner, with knowledge of the grantor’s title, and acknowledging its validity.
It was further said that B. D., having been seised under the deed to him, could not reconvey the estate to Stearns, merely by cancel-ling that deed; (a) and that Stearns, therefore, had nothing in the *404 premises at the time of the second conveyance; and the case of Marshall vs. Fislce was cited as an authority in point. In that case, a third person had acquired a title under the first grantee, and this was known to Prescott, the second purchaser, and also to Adams, the original owner; after which the original deed of conveyance was cancelled, and a new deed thereof made to Prescott. This was the common case of an equitable title, a conveyance sufficient as between the parties, but wanting some of the solemnities pre scribed by law to prevent frauds on strangers, which shall always be good as against all strangers having knowledge of the facts. It is a rule established to prevent frauds.
ADDITIONAL NOTE.
[Where a grantee has acquired title under his deed by a change of possession, it will not be impaired by a subsequent material alteration of such deed. — Chessman vs. Whittemore, 23 Pick. 231. — But see Pullen vs. Shaw, 3 Dev. 238.
Before registration of a deed, the boundaries of another tract having been inserted in it, held, this did not avoid the deed; but, as to the land subsequently inserted, made it an unregistered conveyance. — M’Lindon vs. Winifree, 3 Dev. 262. — Coit vs. Starkweather, 8 Conn. 289. — Jones vs. Jones, 1 C. & M. 721.
Deed of land containing a well and pump, describing the land by metes and bounds. After such description, these words were interlined — “ with pump and well of water.” Held, an immaterial alteration, as it did not change the effect of the deed. — Brown vs. Pinkham, 18 Pick. 172.
The cancellation of a deed by the grantee, who holds under it, or its restoration to the grantor, does not divest the title of the former. — Holbrook vs. Tirrell, 9 Pick. 105. — Jackson vs. Andrew, 4 Wend. 474. -vs. Page, 4 Wend. 585.—Herrick vs. Malin, 22 Wend. 388. — Gilbert vs. Bulkley, 5 Conn. 262. — Bostford vs. More-house, 4 Conn. 550. — Morgan vs. Elam, 4 Yerg. 375.
But where A conveyed land to B, and the deed was not recorded, though B occu pied under it; B then sold to C, and the deed was restored to A and cancelled ; and A made anew deed to C, which was recorded: held, C’s title should prevail over that of a creditor of B, to whom the land was subsequently set off on execution. — Ibid.
Where an action is brought upon the covenants in a deed, or upon a bond or other sealed instrument; upon the plea of non est factum, the plaintiff must show it to be the deed of the defendant, and any alteration must be satisfactorily explained. — 22 Wend. 388.
So although it be offered without proof, as an ancient deed. But, it seems, a mere interlineation will be presumed to have been made before execution. — Ibid. — See Newell vs. Mayberry, 3 Leigh, 250. — Mills vs. Starr, 2 Bail. 359. — Bell vs. Quick, 1 Green, 312.— Wright vs. Wright, 2 Halst. 175. — Nichols vs. Johnson, 10 Conn. 192.
— Camden, &c., vs. Hall, 2 Green, 583.
An interlineation or erasure in the acknowledgment of a deed is an objection to the proof of execution, but will not avoid the deed. — Devinney vs. Reynolds, 1 Watta & Serg. 328. —F. H.]
*405 In the case at bar, there was no fraud practised or attempted by Samuel Dudley, the second purchaser. On the other hand, it is fraudulent in the respondent to attempt to defeat a title made with his knowledge and concurrence, and for which, as it appears, he received at the time a satisfactory consideration. There being, then, no fraud in the second conveyance, nor any other circumstance in the case to take it out of the statute of 1783, c. 38, for regulating such conveyances, it seems to be settled by the words of that statute. Samuel Dudley entered and was seised of the premises under a deed purporting to convey them to him. He had, then, a good title as against Benjamin Dudley, unless the latter could hold the premises by virtue of the previous conveyance to him. That previous conveyance, not being recorded, is not good against any other person than the grantor. * The only [ * 408 ] exception to this provision of the statute is that of a second purchase, made with knowledge of the first, and with a fraudulent design to defeat it; and the case at bar is manifestly not within the exception.
The second objection is, that Benjamin Dudley had been in the quiet possession of the premises for three years and more, next before the date of the complaint, and that his estate therein was not determined. But it does not appear that he had any estate, or any possession of the premises. His son Samuel being on the land at the same time, the possession or seisin will be deemed to be in him who has a legal right to it; (b) and we have seen before that this was Samuel, and not Benjamin Dudley. This legal inference or presumption is fortified, in the present case, by the evidence produced, of Benjamin Dudley’s having labored on the farm, principally under the direction of his son. The jury would be warranted, under these circumstances, in finding that Benjamin Dudley was on the land as the servant of Samuel, and not under any claim of right in himself; in which case, he would never have acquired any such possession of the land as is contemplated in the statute. If Benjamin Dudley had no just title to the premises, he could not have acquired any estate therein by disseisin, so long as Samuel Dudley lived in possession and claiming the whole. His refusal to quit the premises, when requested, might be deemed a disseisin ; but if he acquired any estate in that manner, it must be a fee simple, and must take its commencement from the time of that refusal, which was not three years before the date of the complaint.
The judgment, in this case, is not a bar to any other action, to be hereafter brought by either party. But we have thought it might *406 be useful to express now the opinions we entertain as to the title of the respondent. If, however, he can show a better title than he has here exhibited, or if he wishes to bring it more formally before the Court for a solemn determination, he can do so in such new action, to be brought either by or against him.
* The third, objection is, that there was no evidence of such force as is contemplated by the statute on which this process was founded; and on this point the Court are all of opinion with the defendant. The evidence was, that the guardian, in behalf of the complainants, who were minors, ordered the said Benjamin Dudley to deliver to him the possession of the premises, which he refused to do.
The material words of the statute are copied from certain ancient English statutes made on the same subject, and which have long since received a judicial construction. This construction would undoubtedly influence the decision of the Court, even if they could otherwise entertain any doubt of the intent of the legislature ; as it has always done with respect to the statute of limitations, and many others which are copied from English statutes, on the presumption that, when we adopt words which have long had a certain construction in our law books, we adopt also the same construction.
From these^authorities, as well as from the obvious and natural import of the words, it appears that something more is intended than that force which, in judgment of law, accompanies every trespass on the land of another. There must be some apparent violence offered, in deed or in word, to the person of another; or the party must be furnished with unusual offensive weapons, or attended by an unusual multitude of people; all which circumstances would tend (o excite terror in the owner, and prevent him from claiming or maintaining his rights. (5) But if a man, being in a house, refuse to open the door to one who comes to make an entry, this is no forcible detainer. So if A be in possession of a house, or have a lease thereof at the will of B, and B enters into the house and commands A to go out and leave him in possession, and A will not go out, this is not a forcible detainer. (6)
This was all that was done by the defendant in the present case. He did nothing more than is usual for one having a claim [*410] of title, which he expects and intends to try in * a due course of law. It is like an entry by one claiming title, who makes his entry in order to found thereon an action upon his own seisin; and as the same kind and degree of force are necessarv *407 in a forcible detainer as in forcible entry, we could not support these proceedings against the defendant, without deciding, at the same time, that every common entry on land, by one claiming title, is forcible within the intent of this statute, (a)

Proceedings quashed.

ADDITIONAL NOTE.
[See The People vs. Van Nostrand, 9 Wend. 51. ------- vs. Reed, 11 Wend. 157. -vs. Godfrey, 1 Hall, 240. — State vs. Johnson, 1 Dev. B. 324.—Dutton vs. Tracy, 4 Conn. 79.—Bliss vs. Bange, 6 Conn. 78. — Marley vs. Rodgers, 5 Yerg. 217. — Edwards vs. Batts, 5 Yerg. 441.— Trousdale vs. Darnell, 6 Yerg. 431.—Petty-john vs. Akers, 6 Yerg. 448.— Quertemus vs. Breckinridge, 5 Dana, 125 —Smith vs White, 5 Dana, 381. — Snedecker vs. Quick, 7 Halst. 129. — Allen vs. Smith, 7 Halst 199. — Hendrickson vs. Hendrickson, 7 Halst. 202. — Brick vs. Middleton, 7 Halst 266.— Cunningham vs. Green, 3 Alab. (N. S.) 127.—F. H.]

 [According to the report of the case, the estate had been vested in Benjamin Dudley more than thirteen years before the conveyance to Samuel Dudley; and the deed made to Benjamin was not, in fact, cancelled until after the execution of the deed to Samuel. As the estate had actually passed, the cancelling of the deed surely could have no such effect in law as to revest the legal title in the original grantor" This could only be done by deed. — Marshall vs. Fisk, 6 Mass. Rep. 32. — Dana vs. Newell, 13 Mass. Rep 498. — Roe vs. Archbishops of York, 6 East, 86. — Hudson’s case, Pree Chan. 235. — Bolton vs. Carlisle, 2 H. Bl 259. — Doe vs. Hirst, 3 Stark. N. P. C. 60 *404 — 1 Atk. Con. 387. — Dixon, 588. —Shep. Touch, by Preston, 70.—Gilb. Ev. 109, 110. — Cruise, Ch. 25, tit. 32, s. 18, 19, 20, 21. — Doe vs. Bingham, 5 B. & A. 677.— Woodward vs. Aston, 1 Vent. 297.— Townson vs. Tickell, 3 B. & A. 31. — The distinction which the learned judge makes between this case and the cases where the rights of a third person have intervened, has not a single authority to support it. Stearns had already parted with all the interest he had in the lands; and it is clear “ nemo plus juris ad alium transferre potest quam ipse haberet.” — Dig. lib. 50, t. 27, c. 54.— “ Nemo potest quod non habet dare.” — Ibid. Gothof. n. 9. — The deed of Stearns to Samuel, therefore, was no more efficacious than the deed of any stranger having no title would have been, to pass a legal title to Samuel. —Ed.]

 [Codman & Al. vs. Winslow, ante, 146. — Brimmer vs. Prop. Long Wharf, 1 Pick. 131. —Ed.]

 1 Hawk. P. C. c. 64, § 25, &c. — Dalt. Just. 126.

 Dalt. Just. 302. — 1 Hawk. P. C. c. 64, § 30.

 [Com. Dig., Forcib. Det. B, 2.— 1 Russ. C. and M. 289, 2d ed. — Ed.]